**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Jamie Hart,

                Plaintiff,

      v.

NCO Financial Systems, Inc.,

                Defendant.

Case No. 2:12-cv-733

Judge Graham

Magistrate Judge Deavers

<u>Opinion and Order</u>

Plaintiff Jamie Hart brings this negligence and intentional tort action against his employer, NCO Financial Systems, Inc., to recover for physical injuries he sustained when he was shot by his ex-fiancée outside of NCO's building as he was arriving for work. Hart's ex-fiancée, Melissa Stredney, was not an employee of NCO. Hart alleges that NCO negligently failed to provide a safe work environment for him.

This matter is before the court on cross-motions for summary judgment regarding Hart's negligence claims. The issue raised is whether Ohio law grants immunity from liability to NCO because the Ohio workers' compensation system is Hart's exclusive remedy as to his employer. For the reasons set forth below, the court finds that NCO is immune from liability for the negligence claims.

## I.    Background

Hart began working for NCO on July 6, 2010 as a "rehab representative" who helped individuals in default of their federal student loans. Hart Dep. at 9-11. Hart worked at NCO's office building located at 5626 Frantz Rd., Dublin, Ohio. According to NCO's general manager of operations, NCO leased the office building and parking lot. Symsick Aff. at ¶ 2. NCO was the sole tenant of the building, and the parking lot was private and only for the use of employees and NCO visitors. Id. at ¶¶ 3-4.

The complaint alleges that Hart was engaged to Stredney at the time he started working for NCO but he soon afterwards broke off the engagement. Compl. at ¶ 7. In September 2010 Stredney entered Hart's work area at NCO and physically assaulted him. Hart Aff. at ¶ 5. Stredney was escorted out of the building by an NCO employee. Compl. at ¶ 9. In the following weeks and

months, Stredney made threats of physical harm to Hart by text messages and stalked Hart (without physical confrontation) on numerous occasions in NCO's parking lot.  Hart Aff. at  ¶¶ 7-8; Compl. at ¶¶ 12-17.  Stredney threatened harm to Hart and to anyone else who got in her way.  Compl. ¶ 14. Hart informed his supervisors of these incidents and threats.  Hart Aff. at  ¶ 8; Compl. at ¶¶ 12-17. NCO told Hart to notify the police but took no further action.  Hart Aff. at  ¶ 8; Compl. at ¶¶ 12-17.

The complaint alleges that on December 9, 2010, Stredney was observed by several NCO employees sitting in her car in the NCO parking lot.  Compl. at ¶¶ 19-20.  After Stredney left the premises, an NCO supervisor instructed Hart to file a police report.  Id. at ¶ 21.  There is no indication from the complaint or the evidence of record whether or not Hart notified the police regarding the December 9 incident or any past incidents or threats.

On the morning of December 14, 2010, Hart arrived at NCO in his car at about 7:50 a.m. Hart Dep. at 12-13.  He was scheduled to start work at 8:00 a.m.  Id. at 12.  Other employees were arriving for work at this same time.  Id. at 13.  Because Hart had been designated as an employee of the month, he parked in a spot reserved for such employees near the entrance to the building.  Id. at 15.  He left his car with the intention of walking to the building to start work.  Id.  As Hart began walking toward the building, Stredney (who had allegedly parked her car in a handicap parking spot and waited for Hart to arrive, Compl. at ¶ 23), confronted Hart.  She pulled out a handgun and told Hart to get into her car.  Hart Dep. at 16.  Hart calmly responded, "You don't want to do this."  Id. Stredney repeated her demand for Hart to get into her car and then shot him in the face.  Id. at 17. Hart lost one of his eyes and has undergone numerous surgeries that have cost Hart in excess of $750,000.  Compl. at ¶¶ 26-27.

The court takes judicial notice that in June 2011 Stredney pleaded guilty in state court to charges of felonious assault with a firearm and of tampering with evidence.  See State v. Stredney, No. 10-CR-7457 (Ohio Ct. C.P.).  Stredney is currently serving a sentence of fifteen years of incarceration.

On March 14, 2012, NCO filed a claim with the Ohio Bureau of Workers' Compensation for workers' compensation benefits in relation to Hart.  See Doc. 13, Ex. A-1.  That claim was disallowed by a March 22, 2012 order on the grounds that the "employee did not sustain an injury in the course of and arising out of employment."  Id.  There is no indication that the BWC's ruling was appealed.

Hart filed this suit in the Court of Common Pleas for Franklin County in July 2012.  NCO removed the suit to this court on the grounds of diversity jurisdiction – Hart is a Columbus, Ohio resident and NCO is a Pennsylvania corporation.  The complaint asserts a claim for negligence and alleges that Hart was a business invitee of NCO and that NCO breached its duty to protect Hart from the foreseeable risk of harm that Stredney posed to him.  Hart further asserts claims against NCO for intentional and negligent infliction of emotional distress.

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Longaberger Co. v. Kolt, 586 F.3d 459, 465 (6th Cir. 2009).  The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also Longaberger, 586 F.3d at 465.  "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment."  Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008) (quoting Anderson, 477 U.S. at 248).  Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations.  Daugherty, 544 F.3d at 702; Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).  Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.  The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S.

451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

## III.    Discussion

Both parties have moved for summary judgment on the issue of whether Hart's sole recourse for NCO's alleged negligence is through the Ohio workers' compensation system, in which employers are required to participate. O.R.C. § 4123.35. For employers who comply with § 4123.35 (regarding payment of semiannual premiums into the state insurance fund), Ohio law grants immunity from liability "in damages at common law or by statute for any injury, or occupational disease, or bodily condition received or contracted by any employee in the course of or arising out of his employment." O.R.C. § 4123.74. The "in the course of employment" prong refers "to the time, place, and circumstances of the injury" and whether the injury is sustained by an employee while performing an activity or duty promoting his employer's business. Saunders v. Holzer Hosp. Found., 176 Ohio App.3d 275, 283-84, 891 N.E.2d 1202, 1209 (Ohio Ct. App. 2008). The "arising out of employment" prong refers to the causal relationship between the injury and the injured person's employment. Id.

### A.    An "Injury"

As an initial matter, Hart argues that he has not suffered an injury within the meaning of the workers' compensation statute. An "injury" is defined as "any injury, whether caused by external accidental means or accidental in character and result," that is received in the course of employment or arises out of employment. O.R.C. § 4123.01(C). Hart argues that the statute's use of the word "accidental" limits the definition to only those injuries caused by an accident, and, as such, the physical harm caused to Hart by the deliberate conduct of Stredney does not constitute an injury.[1]

The court must reject the argument that Hart has not suffered an injury within the meaning of the statute. The statute expressly applies to "*any* injury," with enumerated exceptions not relevant here. O.R.C. § 4123.01(C) (emphasis added); O.R.C. § 4123.01(C)(1)-(4) (creating limited exceptions for psychiatric conditions, natural deterioration, pre-existing conditions). The "accidental" language makes clear that injuries caused by accidents fall within the statute's definition, but it does not

---

[1] NCO does not challenge Hart's characterization of Stredney's intent in firing the gun. Stredney pleaded guilty to felonious assault with a firearm under O.R.C. § 2903.11, which has a scienter requirement of "knowingly."

exclude non-accidental injuries from the definition.  See Taylor v. Meijer, Inc., 182 Ohio App.3d 23, 27, 911 N.E.2d 344, 347 (Ohio Ct. App. 2009) (noting that "[t]he test of the right to participate [in workers' compensation] is not whether there was any fault or neglect on the part of the employer or his employees").

Two Ohio court of appeals decisions have rejected the very argument that Hart is now making.  Luo v. Gao, No. 23310, 2007 WL 675635, at *2 (Ohio Ct. App. March 7, 2007); Vacha v. North Ridgeville, No. 10CA009750, 2011 WL 1992041, at *3 n. 1 (Ohio Ct. App. May 23, 2011).  As the court in Luo observed, Ohio courts have long recognized that injuries suffered from intentional physical assaults qualify as injuries under the workers' compensation statute.  Luo, 2007 WL 675635, at *2 (citing Industrial Comm. v. Pora, 100 Ohio St. 218, 125 N.E. 662 (Ohio 1919)); see also Delassandro v. Industrial Comm., 110 Ohio St. 506, 144 N.E. 138 (Ohio 1924).  Ohio case law indeed has developed its own "assaults at the place of employment" test to determine if the injury arose out of the injured employee's employment.  See generally, Lowe v. Cox Paving, Inc., 190 Ohio App.3d 154, 158-59, 941 N.E.2d 88, 91-92 (Ohio Ct. App. 2010) (reviewing Ohio cases).  The "correct inquiry" is not whether the injury was caused by an accident but whether it was sustained in the course of employment or arose out of employment.  Luo, 2007 WL 675635, at *2.

**B.      The Standard is Disjunctive**

Plaintiff further argues that an employer is entitled to immunity only if it can prove that the injury both occurred in the course of employment and arose out of employment.  Plaintiff cites to inapplicable decisions concerning whether injured workers were entitled to benefits under the workers' compensation statute, for which both prongs must be satisfied.  See Fisher v. Mayfield, 49 Ohio St. 3d 275, 277, 551 N.E.2d 1271, 1274 (Ohio 1990); O.R.C. § 4123.01(C) (providing that an injury is not compensable unless it was "received in the course of, *and* arising out of, the injured employee's employment") (emphasis added).   In contrast to the standard for compensability, the "requirements for immunity are set forth in the disjunctive," meaning that immunity is granted when the injury either occurs in the course of employment or arises out of employment.  Maynard v. H.A.M. Landscaping, Inc., 166 Ohio App.3d 76, 83, 849 N.E.2d 77, 82 (Ohio Ct. App. 2006); accord Saunders, 176 Ohio App.3d at 283, 891 N.E.2d 1202, 1208-09; Hahn v. Groveport, No. 07AP-27, 2007 WL 3027075, at *5 (Ohio Ct. App. Oct. 18, 2007).  Section 4123.74 provides for immunity from liability "in damages at common law or by statute for any injury . . . received or contracted by any employee in the course of *or* arising out of his employment."  O.R.C. § 4123.74 (emphasis added).

Thus, NCO is entitled to immunity from Hart's negligence claims if it can show that his injury either was received in the course of employment or arose out of his employment.

### C.    Issue Preclusion

Hart next argues that the March 22, 2012 order of the Ohio Bureau of Workers' Compensation disallowing his claim for benefits has preclusive effect in this suit.[2]  Hart contends that the BWC determined that his injury was not sustained in the course of employment and did not arise out of his employment.  Hart argues that the issue may not be relitigated here.

Under the doctrine of issue preclusion, a party is precluded from relitigating, in a second action, "an issue that has been actually and necessarily litigated and determined in a prior action," even if the prior action was based on a different cause of action.  Ft. Frye Teachers Ass'n, OEA/NEA v. State Emp. Relations Bd., 81 Ohio St.3d 392, 395, 692 N.E.2d 140, 144 (Ohio 1998).  The elements of issue preclusion are: (1) the identical issue was at issue in a previous action; (2) the issue was passed upon and determined by a court of competent jurisdiction; (3) the issue was actually litigated, directly determined, and essential to the final judgment in the prior action; and (4) both actions involved the same parties, or their privies.  Price v. Carter Lumber Co., 985 N.E.2d 236, 241 (Ohio Ct. App. 2012).

The court finds that the doctrine of issue preclusion does not apply here.  The precise issue before the BWC was whether the conjunctive standard for compensability was satisfied – whether the injury occurred in the course of employment *and* arose out of employment.  The BWC held, "The employee did not sustain an injury in the course of and arising out of employment."  See Doc. 13, Ex. A-1.  The BWC stated that its decision was based upon a description of the accident and on information in the claim file, but the BWC did not provide any additional analysis or separate

---

[2] Hart argues that the doctrine of *res judicata*, or claim preclusion, applies and the cases he cites concern that doctrine.  See, e.g., Cooper v. Administrator, Ohio Bureau of Workers' Comp., Nos. CA99-07-082 and CA99-09-108, 2000 WL 710082 (Ohio Ct. App. May 30, 2000) (holding that a prior BWC decision denying benefits had effect of claim preclusion as to the injured employee's second application for benefits regarding the same injury and facts).

The court believes that the doctrine of collateral estoppel, or issue preclusion, is the doctrine Hart intends to invoke, given that the essence of Hart's position is that the BWC has already decided the issue of whether his injury was sustained in the course of employment and arose out of his employment.  The doctrine of claim preclusion plainly does not apply, as the tort claims brought here could not have been brought before the BWC, which adjudicates claims for benefits.  O.R.C. § 4123.511.  The court will accordingly treat Hart's argument as requesting application of the doctrine of issue preclusion.

discussion about whether Hart's injury satisfied either of the prongs.  The only definitive conclusion to be drawn from the decision is that the BWC found that Hart's injury did not satisfy both prongs.

The issue before the BWC is not identical to the one presented here.  In this case, the standard for employer immunity is disjunctive and thus the issue is whether Hart's injury either was received in the course of employment or arose out of his employment.  NCO need only prove that one of the prongs is satisfied in order to prevail.  The court further notes that the plain language of the immunity statute provides that the immunity determination is made "whether or not such injury, bodily condition, or death is compensable under this chapter."  O.R.C. § 4123.74.  This makes clear that the legislature intended that a compensability decision not have preclusive effect on an immunity determination.

The court thus finds that the BWC's decision disallowing Hart's claim for benefits does not have preclusive effect in this action.

### D.    In the Course of Employment

The "in the course of employment" prong refers to those injuries "sustained by an employee while performing a required duty in the employer's service."[3]  Ruckman v. Cubby Drilling, Inc., 81 Ohio St.3d 117, 120, 689 N.E.2d 917, 921 (Ohio 1998).  The employee "need not necessarily be injured in the actual performance of work for his employer."  Id. (citation omitted).  It is sufficient if the injury "is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business.  Id.  A court should examine the time, place, and circumstances of the injury in determining whether the injury occurred in the course of employment.  Id.

The court finds that there is no genuine dispute of material fact on the issue of whether Hart's injury occurred in the course of employment.  As a matter of law, Hart's injury did occur in the course of employment.  His injury was sustained while he walked between his parked car and the entrance to NCO's building.  Hart's workday began at 8:00 a.m., and he arrived at the parking lot at 7:50 a.m. on the morning of the injury.  He parked his car in a parking lot that was adjacent to the NCO building and was for the use of NCO employees.  He parked in a particular spot designated

---

[3] Though the conjunctive standard of compensability does not control here, Ohio case law concerning the meaning of the "in the course of employment" and "arising out of employment" prongs has largely been developed in compensability cases.  The court will look to those cases for guidance as to the meaning and application of those prongs.

for employees of the month.  Hart testified that he was headed to the building's rear entrance, which was "where the employees would enter the building." Hart Dep. at 16.

Though Hart was not necessarily performing a job duty at the moment he was shot, he was reporting for work at a time and manner customary for NCO employees.  He was walking from the parking spot designated for him to the building entrance used by employees.  Hart testified that other employees were arriving for work at the same time   Hart's activity of walking from his car to the building entrance was consistent with, and logically related to, his employment relationship with NCO.

Hart concedes that his injury occurred at his place of work, but he argues that his progress in reporting to work was impeded by Stredney when she confronted him with a gun and shot him. Hart cites no cases in support, and the court finds that his argument concerning impeded progress is unavailing.  In the situation of an employee being involved in a motor vehicle accident in the employee parking lot, the employee's progress is certainly impeded, but courts have nonetheless held that injuries suffered in car accidents in employee parking lots are sustained in the course of employment and arise out of employment, regardless of whether the employee was reporting to work or was leaving work. See, e.g., Marlow v. Goodyear Tire & Rubber Co., 10 Ohio St.2d 18, 225 N.E.2d 241 (Ohio 1967); Kobak v. Sobhani, No. 94764, 2011 WL 94496, at *6-7 (Ohio Ct. App. Jan. 6, 2011); Pursley v. MBNA Corp., No. 88073, 2007 WL 926455, at *2-3 (Ohio Ct. App. March 29, 2007).  The fact that the employee's progress in arriving to or leaving from work was impeded by the car accidents did not influence the analysis.

An injury of almost any magnitude is likely to disrupt, even if momentarily, the employee's performance of his work activity.  The relevant question here is what Hart was doing when the injury occurred.  It is undisputed that he was arriving at work in a manner consistent with his employment relationship.  This is not a situation in which Hart chose to abandon an activity logically related to his employment relationship, such as reporting to work, in order to pursue a non-work activity.  Hart did not voluntary detour from his arrival at work by, for example, walking across the parking lot to confront Stredney or getting in a car with Stredney to engage in a conversation.  See Masden v. CCI Supply, Inc., No. 22304, 2008 WL3990826, at *4 (Ohio Ct. App. Aug. 29, 2008) (holding that employee required to travel for work is in the course of employment while traveling except when he chooses to depart on a personal errand); Pascarella v. Abx Air, Inc., No. CA98-01-002, 1998 WL 468810, at *5 (Ohio Ct. App. Aug. 19, 1998) (same).  Rather, Hart's own testimony

shows that Stredney confronted him as he walked toward the employee entrance and quickly shot him after he saw the gun and told her "don't do this."

The court's conclusion that Hart's injuries occurred in the course of employment is fully consistent with compensability decisions concerning what is known as the "zone of employment." Ohio courts adhere to the "coming and going" rule that injuries suffered while the employee is commuting to or from his place of employment are not compensable.[4] See MTD Products, Inc. v. Robatin, 61 Ohio St.3d 66, 68, 572 N.E.2d 661, 663 (Ohio 1991); Johnston v. Case Western Reserve Univ., 145 Ohio App.3d 77, 82, 761 N.E.2d 1113, 1117 (Ohio Ct. App. 2001). The rationale for the rule is as follows:

> The constitution and the statute, providing for compensation from a fund created by assessments upon the industry itself, contemplate only those hazards to be encountered by the employee in the discharge of the duties of his employment, and do not embrace risks and hazards, such as those of travel to and from his place of actual employment over streets and highways, which are similarly encountered by the public generally.

Ruckman, 81 Ohio St.3d at 119, 689 N.E.2d at 920 (internal quotation marks omitted). The rule has clear application to an employee who is injured in a traffic accident on public roads while commuting to a fixed place of employment, where he begins his employment duties only after arriving. Id. (citing cases).

Courts have developed a "zone of employment" exception to the coming and going rule for injuries occurring at "'the place of employment and the area thereabout, including the means of ingress thereto and egress therefrom, under control of the employer.'" Johnston, 145 Ohio App.3d at 83, 761 N.E.2d at 1118 (quoting Marlow, 10 Ohio St.2d at 22, 225 N.E.2d at 244). Injuries that occur in parking lots or walkways owned or controlled by the employer and intended primarily for employees' use have been held to be within the zone of employment. See, e.g., Marlow, 10 Ohio St.2d at 18, 225 N.E.2d at 242; Kobak, 2011 WL 94496, at *6-7; Pursley, 2007 WL 926455, at *2-3. Injuries that occur on a public road or sidewalk while the employee walks between their place of employment and an off-site employee parking lot have been held to be outside the zone of

---

[4] The "coming and going" rule and the "zone of employment" exception are often discussed without categorizing them as belonging to a particular prong of the compensability determination. See, e.g., MTD Products, 61 Ohio St.3d at 68, 572 N.E.2d at 663. They are typically used to evaluate not only the time and place of the injury but also the cause of the injury. See Janicki v. Kforce.com, 167 Ohio App.3d 572, 577, 855 N.E.2d 1282, 1285-86 (Ohio Ct. App. 2006) (describing the rule as a "tool used to determine whether an injury . . . occurs 'in the course of' and 'arise[s] out of' the employment relationship").

employment.  See Johnston, 145 Ohio App.3d at 83, 761 N.E.2d at 1118-19; Weiss v. Univ. Hosp. of Cleveland, 137 Ohio App.3d 425, 431-32, 738 N.E.2d 884, 889 (Ohio Ct. App. 2000).

Here, it is undisputed that NCO had control over the premises where the injury occurred. NCO leased the building, of which it was the sole tenant, and the adjacent private parking lot that was used by employees.  Symsick Aff. at ¶¶ 2-4.  Hart concedes in his complaint that the location where he was shot "was in the possession of and control of" NCO and was part of the "work environment." Compl., ¶¶ 4-5.

Thus the court finds that NCO is entitled to summary judgment on the issue of whether Hart's injury occurred in the course of employment.

### E.        Arising out of Employment

Because the statutory standard is disjunctive, the court's holding as to the first prong of the immunity determination is dispositive of Hart's negligence claims.  Even so, both parties have fully briefed the issues relating to the second prong and the matter is ripe for decision.

The "arising out of employment" prong refers to the causal relationship between the injury and the injured person's employment.  Ruckman, 81 Ohio St.3d at 121-22, 689 N.E.2d at 922.  The inquiry is based on the totality of the circumstances.  Id. (citing Fisher v. Mayfield, 49 Ohio St.3d 275, 277, 551 N.E.2d 1271, 1274 (Ohio 1990)).  In the context of "fights and assaults at the place of employment, Ohio courts have consistently focused on two factors: (1) whether the origin of the assault was work-related; and (2) whether the claimant was not the instigator."  Lowe v. Cox Paving, Inc., 190 Ohio App.3d 154, 158-59, 941 N.E.2d 88, 91-92 (Ohio Ct. App. 2010) (citing Foster v. Cleveland Clinic Found., Nos. 84156, 84169, 2004 WL 2914985, at *3 (Ohio Ct. App. Dec. 16, 2004), and Coleman v. APCOA, Inc., No. 99AP–60, 2000 WL 192560, at *2 (Ohio Ct. App. Sept. 28, 1999)).  The "arising out of" prong is satisfied only if both factors are present.  Id.

The court finds as a matter of law that Hart's injury did not arise out of his employment with NCO.  While it is undisputed that Hart was not the instigator, it is equally clear that the origin of the assault was not work-related.  The following facts are not contested by NCO: Hart and Stredney were once engaged to be married; Stredney was never employed by NCO; and Stredney made multiple threats to Hart after the engagement was broken off.  Hart Aff. at ¶¶ 2-8.  The injury to Hart arose purely out of this dispute about their personal relationship.

On point is the decision in Foster.  There, the employee was fatally shot by her husband in the lobby of the building in which she worked.  They had been having marital problems, including prior "violent outbursts" by the husband.  Foster, 2004 WL 2914985, at *3.  On the day of the fatal

injury, the husband confronted the employee in the parking lot of the place of employment.  She fled to the lobby of the building, where she was shot.  The court granted summary judgment against the death benefits claim of the employee's estate:

> [R]easonable minds could only conclude that [the employee's] fatal injury arose out of a personal dispute between [she and her husband] that was unrelated to her employment with the Clinic.  There is simply no evidence to remotely suggest that [the fatal shooting] originated out of, was related in any way to, or was exacerbated by, her employment at the Clinic.  The quarrel was nothing more than a domestic dispute brought to fruition in the employment setting. . . .
>
> "Where the animosity or dispute that culminates in an assault is imported into the employment from claimant's domestic or private life, and is not exacerbated by the employment, the assault does not arise out of the employment under any test. . . . . When it is clear that the origin of the assault was purely private and personal, and that the employment contributed nothing to the episode, whether by engendering or exacerbating the quarrel or facilitating the assault, the assault should be held noncompensable." 1-8 Larson's Workers' Compensation Law (2003), Sections 8.02(1)(a) and 8.02(1)(c).

Id.  See also Lowe, 190 Ohio App.3d at 159-60, 941 N.E.2d at 92 (holding that a fight between two employees at the workplace was not work-related because the dispute concerned a lunchtime argument about one employee's demand that the other employee run an errand for him); Harvey v. Mayfield, No. CA-2743, 1990 WL 125187, at *2 (Ohio Ct. App. Aug. 20, 1990) (holding that injury incurred in fight between two employees at the workplace did not arise out of employment because the dispute concerned alleged damage to one of the employee's personal property).

The factual scenario here is thus distinguishable from cases in which an assault related directly to the assailant's displeasure over how the employee performed his job.  See, e.g., Delassandro v. Industrial Comm., 110 Ohio St. 506, 144 N.E. 138 (Ohio 1924) (holding that an injury to a city street sweeper was compensable because it resulted from an assault by a man who was upset with the employee for telling him that he had violated city code by sweeping dirt into the street); Luo, 2007 WL 675635, at *2 (holding that injury arose out of employment where it resulted from a fight after one restaurant employee spilled hot water on another employee).

NCO argues that the assault was work-related because the shooting would not have occurred had Stredney not entered onto NCO's premises.  This argument is unavailing for two reasons.  First, Foster held that "but for" causation does not satisfy the causal connection required for work-relatedness.  See Foster, 2004 WL 2914985, at *5 (rejecting the argument that "'but for [the injured employee's] employment, she would she would not have been at the Clinic and would not have been shot and fatally injured'"); see also Lodge v. Knox, No. 58999, 1991 WL 174205, at *3

(Ohio Ct. App. Aug. 29, 1991) (rejecting "but for" causation).  Second, NCO has not produced any evidence from which it could be found that Hart's employment exacerbated or facilitated the dispute.  It is true that, according to Hart's affidavit, that Stredney had once physically assaulted Hart after gaining unauthorized access into NCO's building, but Hart states that "the deterioration in [Hart and Stredney's] relationship was in no way related to his employment with [NCO]."  Hart Aff. at ¶ 4.  That is, the subject matter of their dispute concerned their personal relationship and not any aspect of Hart's job duties or employment.  Compare with Coleman, 2000 WL 192560, at *2 (holding that there was a genuine issue of material fact on the issue of whether an assault involving two employees was work-related where the record suggested a mixture of personal and job-related reasons for the dispute; factfinder could conclude that one employee's perceived attempt to get the other employee fired exacerbated an assault that also concerned an argument about their wives).

Because there are facts from which a jury could reasonably find that the origin of the assault was not work-related, the court finds that NCO is not entitled to summary judgment on the issue of whether Hart's injury did not arise out of his employment.

### F.    Summary

Section 4123.74 requires that only one of its prongs be satisfied in order for the employer to be immune from liability for damages at common law.  NCO has demonstrated as a matter of law that Hart's injury occurred in the course of his employment, and thus NCO is immune from Hart's claims for negligence and negligent infliction of emotional distress.

Hart has also asserted a claim for intentional infliction of emotional distress.  Section 4123.74's grant of immunity does not extend to intentional torts.  See O.R.C. § 2745.01 (employer's liability for intentional torts); Kaminski v. Metal & Wire Products Co., 125 Ohio St.3d 250, 255-56, 927 N.E.2d 1066, 1073-74 (Ohio 2010) (citing Blankenship v. Cincinnati Milacron Chems., Inc., 69 Ohio St.2d 608, 433 N.E.2d 572 (Ohio 1982)).  Although the first page of NCO's motion for summary judgment states that it is directed at the complaint in its entirety, NCO offers no grounds for why it should be entitled to summary judgment as to the claim for intentional infliction of emotional distress.  Hart's intentional tort claim will therefore proceed.

## IV.    Conclusion

Accordingly, plaintiff's motion for partial summary judgment (doc. 13) is DENIED.  Defendant's motion for summary judgment (doc. 11) is GRANTED as to plaintiff's claims for

negligence and negligent infliction of emotional distress, and DENIED as to plaintiff's claim for intentional infliction of emotional distress.


                                                    s/ James L. Graham
                                                    JAMES L. GRAHAM
                                                    United States District Judge

DATE: July 26, 2013